UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRITTANY B., B/N/F LEAH & ROBERT BOOTH       )<br>)<br>)<br>Plaintiff,                             )<br>)   Civil Action No.  SA-07-CV-15-XR<br>VS.                                                 )<br>)<br>DANNY JASON MARTINEZ, LYTLE   )<br>INDEPENDENT SCHOOL DISTRICT, )<br>AND BOARD OF TRUSTEES          )<br>INDIVIDUALLY AND AS                )<br>REPRESENTATIVES OF LYTLE     )<br>INDEPENDENT SCHOOL DISTRICT, )<br>)<br>Defendants.                         ) | |

**ORDER**

On this date, the Court considered Defendants' third motion to dismiss (Docket No. 20). Plaintiff did not file a response, so the Court will evaluate the motion based on the allegations contained in Plaintiff's Rule 7 reply, which was filed on April 30, 2007. For the reasons discussed below, the motion is GRANTED. Plaintiff's section 1983, 1985, and 1986 claims are DISMISSED. The only remaining claim in this case is the Title IX claim against the Lytle Independent School District ("District"). The Clerk is instructed to keep this case open.

**I. Factual & Procedural Background**

Plaintiff Brittany B., a former student in the Lytle I.S.D. during the 2004-2005 school year, brings suit under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) alleging that a former teacher and coach, Danny Jason Martinez, sexually harassed her and other students. Brittany B. alleges that Martinez inappropriately touched her, kissed her and engaged in similar behavior with

other female students. Plaintiff further alleges that District personnel were aware of Martinez's behavior, but failed to discipline Martinez because of his position as football coach. Plaintiff alleges that when she reported Martinez's behavior, students and district personnel verbally attacked her and undertook retaliatory actions against her. Finally, she alleges that rather than continue to face harassment, her family relocated to another school district. In addition to pursuing a claim under Title IX, Plaintiff brings suit under 42 U.S.C. §§ 1983, 1985 and 1986. Plaintiff also claims that she was deprived of equal protection. Plaintiff also brought suit for common law negligence, negligent employment, negligent failure to report child abuse, and negligent failure to prevent the harassment directed against her.

On April 20, 2007, the Court ruled on Defendant's motion to dismiss for failure to state a claim and for lack of jurisdiction. The Court held that the Title IX claims against the Board of Trustee ("Board") members in their individual capacities were dismissed because a Title IX cause of action cannot be asserted against an individual. The Court held that Plaintiff's claims against the District, the Board, and the Board members in their official capacities alleging common law negligence, negligent employment, negligent failure to report child abuse, and negligent failure to prevent harassment were dismissed because those claims did not fall within the waiver to sovereign immunity contained in the Texas Tort Claims Act. The Court dismissed Plaintiff's state law negligence claims against the Board members in their individual capacities for failure to exhaust the grievance and appeal procedure established by the District. Finally, the Court ordered Plaintiff to file a Rule 7 reply in order avoid dismissal of her section 1983, 1985, and 1986 claims.

In their third motion to dismiss, Defendants seek dismissal of the section 1983 claim against the District and the section 1983 claims against the Board members in their individual capacities.

Defendants also seek dismissal of Plaintiff's section 1985 and 1986 claims.

## II. Legal Analysis

**A.  Standard of review for motion to dismiss for failure to state a claim.**

A party is entitled to dismissal under Fed.R.Civ.P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000) (noting that a court must construe the complaint liberally in favor of the plaintiff). *See also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993). "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins*, 224 F.3d at 498. A motion to dismiss should be granted only when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir .1994).

**B.  Plaintiff stated that she would not pursue her section 1985 and 1986 claims in her Rule 7 reply; therefore, those claims are DISMISSED.**

In her Rule 7 reply, Plaintiff voluntarily stated that she "now dismisses the claims under Sections 1985 and 1986." Defendant has requested that the Court formally dismiss those claims. Based on Plaintiff's decision not to prosecute and failure to file a Rule 7 reply regarding those claims, Plaintiff's section 1985 and 1986 claims are DISMISSED.

**C.  Defendants have not filed a motion to dismiss the Title IX claim against the District, so that claim remains pending.**

Although the Court previously dismissed the Title IX claims against the Board members in their individual capacities, the Court has not dismissed the Title IX claims against the District. The

Court agrees that Plaintiff has stated a viable Title IX claim against the District. In *Gebster v. Lago Vista Independent School District*, the United States Supreme Court stated the following:

> Because the express remedial scheme under Title IX is predicated upon notice to an "appropriate person" and an opportunity to rectify any violation, 20 U.S.C. § 1682, we conclude, in the absence of further direction from Congress, that the implied damages remedy should be fashioned along the same lines. An "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination. Consequently, in cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.
>
> We think, moreover, that the response must amount to deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation. That framework finds a rough parallel in the standard of deliberate indifference. Under a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions. Comparable considerations led to our adoption of a deliberate indifference standard for claims under § 1983 alleging that a municipality's actions in failing to prevent a deprivation of federal rights was the cause of the violation.

524 U.S. 274, 290-91 (1998). Based on *Gebser*, a school district can be held liable for non-supervisor sexual harassment under Title IX if "an official of the recipient entity with authority to take corrective action to end the discrimination" has "actual knowledge of discrimination" in the recipient's programs and "fails adequately to respond" because of "deliberate indifference to the discrimination." In this case, Plaintiff alleges that (1) Iza Marcrums, the Junior High School Principal and the immediate supervisor of Danny Martinez; (2) Brad Worthington, the Vice Principal; (3) Rosemary Mares, the Principal; (4) Randy Ewing, Assistant Superintendent; (5) Michelle Smith, Superintendent; and (6) Laura Uribe-Center, Federal Program Director, had actual knowledge of the alleged discrimination

and failed to adequately respond. It appears that these individuals might qualify as officials of the recipient entity with authority to take corrective action to end the alleged discrimination. Thus, the Title IX claim against the District remains pending in this case.

**D.     The Court will DISMISS the section 1983 claims against the Board members in their official capacities because it is redundant of the section 1983 claim against the District. The Court will DISMISS the section 1983 claim against the District and Board members in their individual capacities for failure to state a claim upon which relief may be granted. To the extent that Plaintiff has alleged a valid section 1983 claim against Reagan Wagner, the Board President, in her individual capacity, the Court concludes that she is entitled to qualified immunity.**

   1.     **Section 1983 claim against the Board members in their official capacities.**

Suing a government official in his or her official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, an official capacity suit is to be treated as a suit against the entity. *Id*. "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 171. The Court will DISMISS the claim against the Board members in their official capacities because the section 1983 claims against them are redundant of the section 1983 claim against the District.

   2.     **Section 1983 claim against the District.**

Plaintiff has asserted a section 1983 claim against the District. In "Plaintiffs' Rule 7(a) Response and Second Amended Original Complaint," she alleges "violations of . . . 42 U.S.C. § 1983 along with violations of the Fourteenth Amendment and the Equal Protection Clause of the U.S. Constitution." Further review of this pleading indicates that Plaintiff is suing the District under section 1983 based on alleged violations of the due process and the equal protection clauses of the Fourteenth Amendment. Plaintiff cited to Fifth Circuit authority to support her due process claim and Tenth Circuit authority to support her equal protection claim. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d

443, 450 (5th Cir. 1993) (en banc) (due process); *S.H.A. v. Tucumcari Mun. Schs.*, 321 F.3d 1285, 1288 (10th Cir. 2003) (equal protection).

*Doe v. Taylor Independent School District* involved a section 1983 claim against a school district and its supervisory employees based on sexual abuse of a student by a high school teacher / coach. In *Doe*, the Fifth Circuit declined to address whether the plaintiff had stated a viable equal protection claim because her substantive due process claim addressed the same conduct and provided the same relief as her putative equal protection claim. 15 F.3d at 458. This Court declines to address the distinction between Plaintiff's equal protection and substantive due process claims because it would not have any impact on the Court's legal analysis.

Municipal liability under section 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)). The policymaker must have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Municipal liability cannot be sustained under a theory of respondeat superior. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Piotrowski*, 237 F.3d at 578. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.

In *Doe*, the Fifth Circuit recognized that "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right." 15 F.3d at 445. The Fifth Circuit further stated that "school officials can be held liable for supervisory failures that result in the

molestation of a schoolchild if those failures manifest a deliberate indifference to the constitutional rights of that child." *Id.* The plaintiff in *Doe* sued the school district, superintendent, and principal based on sexual molestation of a student by a teacher / coach. *Id.* at 445, 450. Importantly, however, the appeal in *Doe* was focused solely on the district court's denial of qualified immunity to the superintendent and principal, who were sued in their "supervisory [*i.e.* individual] capacity by Jane Doe for permitting violations of her substantive due process right to bodily integrity."[1] *Id.* at 445. In *Doe*, the Fifth Circuit decided whether the district court's denial of qualified immunity to the principal and superintendent was proper. *Id.* at 454. In this case, although Plaintiff criticizes the actions or inactions of various supervisory officials in her pleadings, she only sued (1) the employee tortfeasor;[2] (2) the District; (3) the Board members in their official capacities; and (4) the Board members in their individual capacities.[3] Thus, although *Doe* is helpful to Plaintiff because it recognizes the theory of

---

[1]According to the Fifth Circuit, "A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student." *Doe*, 15 F.3d at 454. Supervisory officials are entitled to the defense of qualified immunity. *Id.* at 454-55. The Fifth Circuit speculated in *Doe* that it could "foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations." *Id.* at 457 n.12.

[2]The court notes that Danny Jason Martinez, the alleged employee tortfeasor, has never been served in this case. In her Original Complaint, Plaintiff stated that Martinez's address for service of process was unknown. In her Second Amended Complaint, Plaintiff stated that Martinez resigned from his position as coach on September 29, 2005. Apparently, Martinez's current whereabouts are unknown.

[3]Plaintiff's Original Petition (which was filed prior to removal), First Amended Complaint, and Second Amended Complaint (which was consolidated with her Rule 7 reply) do not list any supervisory officials of the District as Defendants.

liability upon which she relies, it is also unhelpful to her because it does not directly address the scope of liability under section 1983 for actions of the District (or Board members in their official capacities). *Doe* addressed the scope of *individual liability of school officials* who are sued in their *supervisory capacity* under section 1983; it did not address the scope of *Monell liability* of the District (or Board members in their official capacities) who are sued under section 1983. *See id.* at 453 ("The most important difference between *City of Canton* and this case is that the former dealt with a municipality's liability whereas the latter deals with an individual supervisor's liability").

The Court believes that the analysis contained within *Rivera v. Houston Independent School District* is dispositive of Plaintiff's section 1983 claim against the District. 349 F.3d 244, 248 (5th Cir. 2003). *Rivera* held that under Texas law, the Board of Trustees, not the Board in combination with any subordinate school district officials (*i.e.* teachers, principals, and superintendents), is the "official policymaker" for purposes of section 1983 liability. *Id.* at 247-48. Although teachers, principals, and superintendents might have "decision-making authority" under the Texas Education Code, they do not have "the policymaking authority required to sustain liability under § 1983." *See id.* at 248. In *Rivera*, the Fifth Circuit stated that "the Board is the one and only policymaker for HISD," and the Board has not delegated any policymaking authority to subordinate school district personnel. *See id.* ("[T]his delegation of decision-making authority [to the principal] does not negate the fact that both under Texas law, and the Board's own policies, final policymaking authority lies exclusively with the Board"). *Id.* The Fifth Circuit has stated that "although Texas law provides that the principal is to exercise decision-making authority in certain areas, even in those areas the principal must follow the guidelines and policies established by the school district." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir.1995). Thus, Plaintiff cannot impute the actions of teachers,

principals, and superintendents to the District for purposes of section 1983 liability.

> For purposes of the section 1983 claim against the District, "official policy" is:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). In this case, Plaintiff certainly has not identified a formal "policy statement" of ignoring or condoning sexual harassment or abuse of students that was "officially adopted and promulgated" by the Board. On the contrary, Plaintiff's allegations establish that the Board had promulgated official policies designed to combat sexual harassment and abuse by teachers. In her Rule 7 reply, Plaintiff stated that the Board "established the rules and regulations for dealing with sexual abuse / harassment of students by teachers . . . . In the case of Lytle I.S.D., it is the general policy of the district to place a teacher on administrative leave pending a full investigation of allegations of sexual abuse. In the case of Brittany B., the District administrators failed to comply with their policies by not placing Danny Jason Martinez on administrative leave until such time as they had completed a thorough investigation . . . ." Thus, Plaintiff's own allegations state that various school administrators *ignored* official policies promulgated by the Board to address sexual harassment and abuse. As discussed in *Rivera*, a school administrator's alleged violation of official Board policy cannot be imputed to the Board itself for purposes of section 1983 liability. The District cannot be held liable under section 1983 on a theory of respondeat superior. *Piotrowski*, 237 F.3d at 578.

Relying on the second definition of "official policy," Plaintiff essentially argues that the Board established an informal custom of ignoring or condoning sexual harassment or abuse of students such that it constituted official Board policy, and this informal custom increased the danger to Plaintiff.

Based on the information contained in Plaintiff's Rule 7 reply, the Court finds that even if such an informal custom existed, "there is no evidence showing the Board had actual or constructive knowledge of its existence." *Rivera*, 349 F.3d at 249. In *Rivera*, the Fifth Circuit stated the following regarding the existence of an informal custom:

> Taking the Parents' evidence that certain teachers did not adequately respond to "rule infractions involving gang activity" or the wearing of "gang wear" as true, it only demonstrates that those teachers were acting in violation of Board policy designed to combat gang activities. There is no evidence that the Board knew of this behavior or condoned it. In fact, its official policies of providing school security and encouraging teachers and students to report gang activity through the GEAR program and tip line suggest a policy that was, at minimum, antagonistic to gang related activity.
>
> Furthermore, even if the Parents could show that the Board was not assiduous at fighting gang activity, this does not demonstrate that it was "deliberately indifferent" to the danger that gang activity might have posed to Avila. Nor does it show that the Board affirmatively placed Avila in a position of danger, namely in the situation where Balderas was a greater threat to him than he would have been otherwise.

*Id.* at 249-50. Similarly, in this case, Plaintiff has alleged that she and her parents "reported to District teachers and administrators the fact that Mr. Martinez had inappropriately touched the student, had kissed the student and had tried to encourage the student to go to at least one party with him." In particular, Plaintiff alleges that the following individuals failed to adequately respond to her reports of sexual abuse, retaliated against her, and/or harassed her for making the complaint: (1) Iza Marcrums, the Junior High School Principal and the immediate supervisor of Danny Martinez; (2) Jake Trinidad, a teacher in Lytle I.S.D.; (3) Brad Worthington, the Vice Principal; (4) Rosemary Mares, the Principal; (5) Randy Ewing, Assistant Superintendent; (6) Michelle Smith, Superintendent;

(7) Laura Uribe-Center, Federal Program Director; and (8) Michelle Aginugua, the assistant to Martinez. Plaintiff alleges that Uribe-Center retaliated against her by "threaten[ing] sanctions for any truancy against the family." She alleges that Smith retaliated against her by accusing her of not being truthful because she initially recanted her story. She alleges that Aginugua harassed her after she made the complaint against Martinez.

In order to prevail on her section 1983 claim against the District, Plaintiff must show that her constitutional rights were violated through the execution of an official policy or custom properly attributable to the Board itself. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995), *cert. denied*, 517 U.S. 1191 (1996). Furthermore, it is not enough for Plaintiff merely to identify conduct properly attributable to the District; she must also demonstrate that, through its deliberate conduct, the custom or policy of the Board was the "moving force" behind the injuries alleged. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir. 1998); *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Plaintiff alleges that on September 27, 2005, "after nothing had changed," her mother emailed the Board President, Reagan Wagner, and requested an immediate school board meeting to address the situation. Attached to this email was a letter to the Chief of Police written by Plaintiff outlining the sexual harassment allegations against Martinez. According to Plaintiff, Wagner "instructed the parent to continue through the grievance process and, if she was not satisfied with the results, then the school board would hear the complaint." Plaintiff acknowledges that her family moved out of the school district and withdrew her from school before her grievance was ever heard by the Board. These facts demonstrate that Wagner encouraged Plaintiff to pursue the administrative remedies available in the District for addressing sexual harassment and abuse claims. These facts do not indicate that Wagner in any way obstructed or impeded Plaintiff's

access to the grievance process established by the Board. Even assuming that the various school administrators retaliated against Plaintiff for pursuing her grievance against Martinez,[4] this action cannot be imputed to Wagner or the Board. The legal arguments contained in Plaintiff's Rule 7 reply ignore the crucial distinction between a section 1983 claim against a school official in his or her supervisory (*i.e.* individual) capacity, and a section 1983 claim against a school district or members of the Board of Trustees in their official capacities. Plaintiff failed to name the various school officials as Defendants, and their alleged unconstitutional actions cannot be imputed to the Board for purposes of section 1983 liability. The motion to dismiss the section 1983 claim against the District is GRANTED.

### 3. Section 1983 claim against the Board members in their individual capacities.

In order to state a claim under section 1983 against the Board members in their individual capacities, Plaintiff must identify Defendants who were either personally involved in the constitutional violation of whose acts are causally connected to the constitutional violations alleged. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *see Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (stating that "we have consistently examined the actions of defendants individually in the qualified immunity context"). As discussed previously, the only individual member of the Board discussed in Plaintiff's Rule 7 reply was Reagan Wagner, the Board President. Wagner encouraged Plaintiff to exhaust her administrative remedies so that the Board could address her sexual harassment claims, but Plaintiff failed to do so. Even assuming that this was an ineffective response, the Court finds that it was not deliberately indifferent. *See Doe*, 15 F.3d at 457-48 & n.12 (holding that a supervisory official's actions were not deliberately indifferent merely because they were

---

[4]The Court expresses no opinion on the merits of Plaintiff's retaliation claims.

ineffective). Wagner was not present at the initial meeting between school administrators and Plaintiff. Plaintiff did not allege that any other Board members other than Wagner were aware of the alleged sexual harassment. The motion to dismiss the section 1983 claims against the unnamed Board members in their individual capacities is GRANTED. To the extent that Plaintiff has alleged a viable section 1983 claim against Wagner in her individual capacity, the Court concludes that she is entitled to qualified immunity because she did not act with deliberate indifference. *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 219 ("The deliberate indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity").

### III. Conclusion

Defendant's motion to dismiss is GRANTED. Plaintiff's section 1983, 1985, and 1986 claims are DISMISSED. The only remaining claim in this case is the Title IX claim against the District. The Clerk is instructed to keep this case open.

It is so ORDERED.

SIGNED this 28th day of June, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE